IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JOSEPH A. NAVARRO, | § | |
| *Plaintiff,* | § | SA-18-CV-00724-FB |
| vs. | § | |
| VIA METROPOLITAN TRANSIT, LEO TELLEZ, STEVIE SMITH, | § | |
| *Defendants.* | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns Defendants' Motion to Dismiss [#10]. Also before the Court is Plaintiff's Response [#11] and Defendants' Reply [#13]. On November 6, 2018, the Honorable Fred Biery referred all pre-trial proceedings in this case to the undersigned for disposition pursuant to Federal Rule of Civil Procedure 72 and Rules CV-72 and 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas [#15]. The undersigned has authority to enter this Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it is recommended that Defendants' Motion to Dismiss be **DENIED.**

## I. Factual and Procedural Background

This case arises under the Family and Medical Leave Act of 1993 ("the FMLA"), as amended, 29 U.S.C. § 2601 *et seq.*, and the Rehabilitation Act of 1973 ("the Rehabilitation Act"), as amended, 29 U.S.C. § 701 *et seq.* The Court exercises jurisdiction over these claims under 28 U.S.C. § 1331.

1

Plaintiff Joseph A. Navarro ("Plaintiff"), a former employee of VIA Metropolitan Transit ("VIA"), originally filed this case on July 13, 2018 [#1]. The original complaint named only one defendant, VIA. Plaintiff filed an amended complaint on September 28, 2018, which, in addition to VIA, named two individual defendants: Leo Tellez and Stevie Smith [#9]. Both Mr. Tellez and Mr. Smith, who are employees of VIA, are being sued in their official capacities only. Plaintiff alleges that his former employer and supervisors interfered with his request for FMLA leave and discriminated and retaliated against him for exercising his rights under the FMLA. (Am. Compl. [#9] at ¶¶ 34–35.) Plaintiff also alleges that VIA failed to accommodate his disability and retaliated against him in violation of the Rehabilitation Act. (*Id.* at ¶¶ 42–43.)

On October 12, 2018, VIA, Mr. Tellez, and Mr. Smith (collectively, "Defendants") filed a motion to dismiss the Amended Complaint under Rules 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure [#10]. The Court held an initial pre-trial conference on January 8, 2019, at which the parties were represented through counsel. At the hearing, the Court heard argument from both sides on Defendants' motion to dismiss. On January 8, 2019, the Court issued an order staying all discovery in this case, except for the exchange of initial disclosures required by Rule 26(a)(1), until it has ruled on the motion to dismiss [#25]. That same day, Plaintiff filed an advisory to the Court [#26] concerning Defendants' motion to dismiss. On January 18, 2019, Defendants' filed a response to Plaintiff's advisory [#27].

## II. Legal Standard

Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject-matter jurisdiction of the district court to hear a case. *See* Fed. R. Civ. P. 12(b)(1); *Ramming v. U.S.*, 281 F.3d 158, 161. "The party asserting jurisdiction bears the burden of proof for a 12(b)(1) motion to dismiss." *Ballew v. Cont'l Airlines, Inc.*, 668 F.3d 777, 781

(5th Cir. 2012). Where, as here, a motion to dismiss for lack of jurisdiction is limited to a facial attack on the pleadings, it is subject to the same standard as a motion brought under Rule 12(b)(6). *See Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008); *Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992).

To survive a Rule 12(b)(6) motion to dismiss, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy the Rule 8 pleading standard, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although a complaint does not need to contain "detailed factual allegations" to survive a motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555; the allegations pleaded must show "more than a sheer possibility that a defendant has acted unlawfully," *Iqbal*, 556 U.S. at 678.

A court considering a motion to dismiss must accept "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Const. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004). While a court must accept all of the claimant's well-pleaded facts as true, it is not bound to accept as true conclusory allegations or allegations that merely restate the legal elements of a claim. *See Chhim v. Univ. of Texas at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678). In short, a claim should only be dismissed if a court determines that it is beyond doubt that the claimant cannot

prove a plausible set of facts that support the claim and would justify relief. *See Twombly*, 550 U.S. at 570.

### III. Analysis

Defendants' motion to dismiss should be denied. Plaintiff's FMLA claims are not barred by the doctrine of sovereign immunity and Plaintiff has pleaded sufficient facts in support of his Rehabilitation Act claims.

**A.     Defendants' motion to dismiss Plaintiff's FMLA claims under Rule 12(b)(1) should be denied.**

Defendants move to dismiss Plaintiff's FMLA claims for lack of subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). Defendants contend that the Eleventh Amendment of the United States Constitution bars these claims. It does not. Because VIA is not an arm of the state, it is not protected by sovereign immunity from suit in federal court under the FMLA, nor are its employees.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment has been understood as a declaration that the principle of sovereign immunity is a constitutional limitation on the federal judicial power established in Art. III, § 2 of the Constitution. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984). The principles of state sovereignty embodied by the Eleventh Amendment establish that "the entire judicial power granted by the Constitution does not embrace authority to entertain a suit brought by private parties against a State without consent given." *N. Ins. Co. of New York v. Chatham Cty., Ga.*, 547 U.S. 189, 195 (2006) (quoting *In re State of New York*, 256 U.S. 490, 497 (1921)). In addition to providing immunity to states from

suits brought by private citizens in federal court, the Eleventh Amendment also provides immunity to states agencies, *see Pennhurst*, 465 U.S. at 100, and, subject to an exception where injunctive relief is sought, to individual state officials acting in their official capacities, *see Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 414 (5th Cir. 2004). The Fifth Circuit has clarified that state sovereign immunity extends to any state agency or entity deemed an "alter ego" or "arm" of the state. *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002) (citing *Vogt v. Bd. of Comm'rs of Orleans Levee Dist.*, 294 F.3d 684, 688–89 (5th Cir. 2002)).

Here, it is clear that VIA is a governmental entity operating under the authority of Chapter 451 of the Texas Transportation Code. *See* Tex. Transp. Code Ann. § 451.052(c) (West 2017); *see also Martinez v. VIA Metro. Transit Auth.*, 38 S.W.3d 173, 175 (Tex. App.—San Antonio 2000, no pet.) ("VIA is a governmental unit with exclusively governmental functions."). However, it is well-settled that not all governmental entities are entitled to assert Eleventh Amendment sovereign immunity. Although states and their agencies are shielded from suits brought by private citizens in federal court, the Supreme Court has rejected Eleventh Amendment immunity for counties and municipalities. *See Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency*, 440 U.S. 391, 401 (1979) ("[T]he Court has consistently refused to construe the [Eleventh] Amendment to afford protection to political subdivisions such as counties and municipalities, even though such entities exercise a 'slice of state power.'").

VIA's authority is created by Article 1118x of the Texas Revised Civil Statutes, which has since been superseded by Chapter 451 of the Texas Transportation Code. *See* Tex. Rev. Civ. Stat. Ann. art. 1118x, repealed and now codified in Tex. Transp. Code. Ann. § 451.001 *et seq.* "In accordance with this legislation, the City of San Antonio passed an ordinance creating VIA

on February 3, 1977, and the citizens of San Antonio confirmed this act by election on November 8, 1977." *Salvatierra v. Via Metro. Transit Auth.*, 974 S.W.2d 179, 181 (Tex. App.—San Antonio 1998, no pet.). VIA subsequently commenced operations on March 1, 1978. *See id.* Thus, VIA was created by the City of San Antonio, not the State of Texas.

In 1979, the Texas legislature authorized the creation of regional transportation authorities. *See* Tex. Transp. Code Ann. § 451.001 *et seq.* Under Chapter 451 of the Texas Transportation Code, VIA's management, operation, and control is the responsibility of an eleven-member Board of Trustees, whose members are appointed by the San Antonio City Council, the Bexar County Commissioners, and the Suburban Council of Mayors. *See id.* §§ 451.707, 451.501–451.504. Hence, the State of Texas plays no role in choosing the members of VIA's governing body.

Additionally, the powers of VIA, which include the power to impose taxes, sell, lease, and dispose of property, and issue bonds, are sufficient indicia of independence to make it distinct from the state for Eleventh Amendment purposes. *See Moor v. Alameda Cty.*, 411 U.S. 693, 720 (1973) (stating that the "corporate powers" of California counties, which include the power to sell, hold, or otherwise deal in property, levy taxes, and issue general obligation bonds, "strike us as persuasive indicia of the independent status occupied by California counties relative to the State of California"); *Hoff v. Nueces Cty.*, 153 S.W.3d 45, 49 (Tex. 2004) (holding that a county is not an arm of the state because it possesses sufficient indicia of independence, such as the power to levy taxes to pay for its debts, sell or lease real property, and issue bonds to provide for its funding).

The undersigned also notes that this Court recently held in another case that remains pending that VIA is a municipal corporation, not an arm of the state, and that it is not immune

from FMLA claims under the Eleventh Amendment.[1] In fact, in that case, *Washington v. Rodriguez*, Judge Bemporad issued a show cause order to VIA to show cause as to why it should not be sanctioned for reurging this argument after the Court had conclusively ruled on the issue. VIA ultimately withdrew its motion to dismiss and conceded that its legal position—that VIA is an arm of the state and entitled to sovereign immunity—is meritless.[2]

In sum, VIA is not an arm of the state and therefore does not possess Eleventh Amendment immunity from claims brought in federal court under the FMLA. Accordingly, the Eleventh Amendment does not bar Plaintiff's FLMA claims against Defendants.

**B.      Defendants' motion to dismiss Plaintiff's Rehabilitation Act claims under Rule 12(b)(6) should be denied.**

Plaintiff has pleaded sufficient facts to support his Rehabilitation Act claims at this early stage of the litigation. Section 504 of the Rehabilitation Act provides, in pertinent part, that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving *Federal financial assistance* . . . ." 29 U.S.C. § 794(a) (emphasis added). Thus, by its terms, Section 504 "limits its coverage to the 'program or activity' that 'receiv[es]' federal financial assistance." *U.S. Dep't of Transp. v. Paralyzed Veterans of Am.*, 477 U.S. 597, 604 (1986). The Fifth Circuit has held that to state a Section 504 claim, a plaintiff must allege, among other things, "that the

---

[1] *See Washington v. Rodriguez*, Case No. 5:18-cv-00316-FB-HJB. Judge Bemporad's report and recommendation [#51] was adopted by Judge Biery on December 7, 2018 [#54]. VIA responded [#65] to Judge Bemporad's Show Cause Order [#63] and then moved to withdraw its motion arguing that VIA was immune from the plaintiff's FMLA claims [#66].

[2] Yet, VIA filed nothing in this case notifying the undersigned that Judge Biery had recently decided this legal point; nor did VIA notify the undersigned that it had conceded the baselessness of its position in the other case. This is troubling.

7

specific program or activity with which he or she was involved receives or directly benefits from federal financial assistance." *Lightbourn v. Cty. of El Paso, Tex.*, 118 F.3d 421, 427 (5th Cir. 1997) (citing *Brown v. Sibley*, 650 F.2d 760, 767–71 (5th Cir. 1981)). Hence, "a plaintiff may not predicate a § 504 claim against a state actor on the mere fact that the state itself obtains federal money." *Id.* (citing *Brown*, 650 F.2d at 767).

Defendants' first argument is that Plaintiff's Rehabilitation Act claims must be dismissed because Plaintiff has not pled that VIA received federal financial assistance or that he worked for a program or activity that received federal financial assistance. But Defendants have mischaracterized Plaintiff's pleadings. Defendants claim that the Amended Complaint alleges only that VIA "receives federal funding in whole or in part," (Am. Compl. [#9] at ¶ 41), and argue that "[t]his threadbare assertion cannot support a cause of action under Section 504," (Mot. to Dismiss [#10] at 8). That is because, according to Defendants, alleging that VIA receives "federal funding" is not the same as alleging that VIA receives "federal financial assistance" and is not sufficient to invoke the Rehabilitation Act. Yet, as Plaintiff points out, the Amended Complaint alleges not only that VIA "receives federal funding in whole or in part," but that Plaintiff was subjected to discrimination "under any program or activity receiving Federal financial assistance." (Am. Compl. [#9] at ¶¶ 41, 42.) Thus, the Amended Complaint alleges that VIA received federal financial assistance.

Next, Defendants claim that "[c]ourts have held that conclusory assertions of receiving 'federal funding'—such as Plaintiff's assertions here—cannot support a cause of action under Section 504." (Defs.' Reply [#13] at 5.) Defendants rely exclusively on two unpublished opinions from district courts in the Ninth Circuit. *See McElroy ex rel. McElroy v. Tracy Unified Sch. Dist.*, No. 207CV00086MCE-EFB, 2008 WL 4754831, at *5 (E.D. Cal. Oct. 29, 2008);

8

*Johnson v. Ahtna Tech. Servs. Inc.*, No. CV-18-00053-PHX-SPL, 2018 WL 4510539, at *2 (D. Ariz. Sept. 20, 2018). However, in *Taylor v. City of Shreveport*, 798 F.3d 276 (5th Cir. 2015), the Fifth Circuit explicitly rejected this line of reasoning. There, it was argued that the plaintiffs, police officers employed by the City of Shreveport, failed to allege in their complaint that the specific program or activity with which they were involved—namely, the police department— received or directly benefited from federal financial assistance. *See Taylor*, 798 F.3d at 283. The Fifth Circuit disagreed, noting that the complaint alleged that "the City receives federal funds for the police department" and ultimately concluding that the City of Shreveport's Police Department is a specific "program or activity" within the meaning of the Rehabilitation Act. *Id.* On this basis, the Fifth Circuit held that "[t]he complaint is therefore not defective in this regard." *Id.* Thus, under *Taylor*, allegations that the program or activity receives federal funds are sufficient to state a claim. *See also Mesa v. City of San Antonio*, No. CV SA-17-CA-654-XR, 2017 WL 5924263, at *2 (W.D. Tex. Nov. 29, 2017) (holding that allegation in the complaint that "Defendant received federal funds and utilized them as part of its operations" was sufficient to allege that the defendant received federal funds, which was sufficient to state a claim).

Here, Plaintiff alleges that VIA is a "program or activity" as defined by the Rehabilitation Act, (Am. Compl. [#9] at ¶ 41); that VIA receives "federal funding," (*Id.*); and that he was subjected to discrimination under a "program or activity receiving Federal financial assistance," (*Id.* at ¶ 42). Under binding Fifth Circuit precedent, these allegations are sufficient to allege that VIA received federal funds, which is sufficient to state a claim.

The only other case cited on this question, *Brown v. Sibley*, 650 F.2d 760 (5th Cir. 1981), does not save Defendants' argument. There, the Fifth Circuit held that "it is not sufficient, for

9

purposes of bringing a discrimination claim under Section 504, simply to show that some aspect of the relevant overall entity or enterprise receives or has received some form of input from the federal fisc." *Brown*, 650 F.2d at 769. The panel in *Brown* elaborated that "[a] private plaintiff in a section 504 case must show that the program or activity with which he or she was involved, or from which he or she was excluded, itself received or was directly benefited by federal financial assistance." *Id.* Thus, under *Brown*, the receipt of federal financial assistance by a multi-program entity, for use by only certain programs or activities, does not automatically bring the entire entity within the reach of Section 504 of the Rehabilitation Act. In other words, Section 504 claims must address themselves to those specific programs or activities that receive some federal financial assistance. Here, unlike in *Brown*, Plaintiff has identified a specific program or activity—VIA—that both allegedly receives federal financial assistance and discriminated against him.[3] Defendants' motion to dismiss Plaintiff's Rehabilitation Act claims on this basis should therefore be denied.

Defendants' second argument is that Plaintiff's Rehabilitation Act claims should be dismissed because Plaintiff has failed to plead any facts to support a plausible failure-to-accommodate or retaliation claim under the Rehabilitation Act. "The Rehabilitation Act prohibits discrimination against an otherwise qualified individual with a . . . disability . . . in

---

[3] In his Amended Complaint, Plaintiff claims that VIA is a "program or activity" as that term is defined in the Rehabilitation Act. (Am. Compl. [#9] at ¶ 41.) Defendants do not appear to dispute this allegation. Section 794(b) defines a "program or activity" to include "all of the operations of . . . a department, agency, special purpose district, or other instrumentality of a State or of a local government . . . any part of which is extended Federal financial assistance." 29 U.S.C. § 794(1). This expansive definition would appear to include a mass transit agency, such as VIA. *See Culler v. S.C. Elec. & Gas Co.*, No. CV 3:02-2803-17, 2004 WL 7332849, at *7 (D.S.C. Apr. 27, 2004), *modified on reconsideration*, No. CV 3:02-2803-17, 2004 WL 7332848 (D.S.C. June 3, 2004) (determining that the operation of a public transportation system is a "program or activity" as that term is defined in the Rehabilitation Act). Nothing in this Report and Recommendation precludes VIA from arguing otherwise at a later point in this litigation if it has a legal and factual basis to do so.

programs that receive federal financial assistance." *Kapche v. City of San Antonio*, 176 F.3d 840, 844 (5th Cir. 1999). To recover under the Rehabilitation Act, a plaintiff generally "must prove that (1) he is an 'individual with a disability'; (2) who is 'otherwise qualified'; (3) who worked for a 'program or activity receiving Federal financial assistance'; and (4) that he was discriminated against 'solely by reason of her or his disability.'" *Hileman v. City of Dallas, Tex.*, 115 F.3d 352, 353 (5th Cir. 1997) (quoting 29 U.S.C. § 794(a)). To prevail on a failure-to-accommodate claim, a plaintiff must prove that "(1) the plaintiff is a 'qualified individual with a disability'; (2) the disability and its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations." *Feist v. Louisiana, Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (quoting 42 U.S.C. § 12112(b)(5)(A)).

In his Amended Complaint, Plaintiff alleges that he "is an individual with a disability" within the meaning of the Rehabilitation Act, (Am. Compl. [#9] at ¶ 39); that he was "qualified to perform the essential functions of his job with or without reasonable accommodation," (*Id.* at ¶ 40); that VIA's discriminatory acts included the "failure to make reasonable accommodations under 42 U.S.C. § [12111(9)]," the "denial of employment opportunities . . . based on the need to make reasonable accommodation," and "retaliation . . . under 42 U.S.C. § 12203," (*Id.* at ¶ 43); and that his "disability and request for accommodation were determinative factors in [VIA's] decision to terminate him," (*Id.* at ¶ 44). Thus, Plaintiff has pleaded sufficient facts in support of his failure-to-accommodate and retaliation claim. Although Defendants contend that Plaintiff has not alleged that he requested an accommodation or that an accommodation was denied, Plaintiff in fact pleaded that "Plaintiff's . . . request for accommodation" was a determinative

factor in VIA's decision to terminate him and that VIA "fail[ed] to make reasonable accommodations." (*Id.* at ¶¶ 43, 44.) This is sufficient at this stage.

Defendants' reliance on *Mesa* is inapposite. There, this Court dismissed a failure-to-accommodate claim because the plaintiff failed to allege any facts indicating that he requested an accommodation or that a reasonable accommodation was denied. *See Mesa*, 2017 WL 5924263, at *4. Indeed, the Court noted that the only mention of accommodation in the plaintiff's pleadings was a statement that "Defendant intentionally retaliated against Claimant based on his requests for accommodation." *Id.* at *4 n.4. Here, however, Plaintiff has specifically alleged that he requested accommodations and that VIA failed to make reasonable accommodations. (Am. Compl. [#9] at ¶¶ 43–44.) Thus, Plaintiff's Rehabilitation Act claims should not be dismissed for failure to state a claim.

## IV.  Conclusion

Having considered the motion and the response and reply thereto, the undersigned recommends that Defendants' Motion to Dismiss [#10] be **DENIED.**

## V.  Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this Report and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this Report and Recommendation must be filed within **fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The party shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions, or

recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive, or general objections. A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation shall bar the party from a *de novo* determination by the district court. *See Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 8th day of February, 2019.

_____
ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE