IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JOSEPH A. NAVARRO, | § | |
| | § | |
| *Plaintiff,* | § | SA-18-CV-00724-FB |
| | § | |
| vs. | § | |
| | § | |
| VIA METROPOLITAN TRANSIT, LEO TELLEZ, STEVIE SMITH, | § | |
| | § | |
| | § | |
| *Defendants.* | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns Defendant VIA's Motion for Summary Judgment [#45] and Defendants Leo Tellez and Steve Smith's Motion for Summary Judgment [#46]. All dispositive pretrial matters in this case have been referred to the undersigned for disposition pursuant to Western District of Texas Local Rule CV-72 and Appendix C [#15]. The undersigned has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). In evaluating Defendants' motions, the Court has also considered VIA's Response [#52], Tellez's and Smith's Response [#53], and Navarro's Replies [#56, #57]. For the reasons set forth below, it is recommended that the motions be **GRANTED**.

## I. Background

This case arises out of the termination of Plaintiff Joseph A. Navarro's employment as a van operator with Defendant VIA Metropolitan Transit ("VIA"). Navarro's Amended Complaint alleges that he requested intermittent leave under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*, due to a herniated disc; that his supervisors Defendants Leo Tellez and Steve Smith interfered with his request by refusing to make changes to his schedule; and that he

was constructively discharged in retaliation for requesting and taking FMLA leave. (Am. Compl. [#9] at ¶¶ 14, 17–21.) Navarro's Amended Complaint asserts: (1) a cause of action for discrimination, interference, and retaliation under the FMLA against all three Defendants; and (2) a cause of action for failure to accommodate his disability and for retaliation in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.*, against VIA. (*Id.* at ¶¶ 26–46.)

Defendants collectively moved to dismiss Navarro's Amended Complaint, but the motion was denied. Accordingly, all claims asserted in Navarro's First Amended Complaint remain pending. VIA and the individual Defendants have now moved for summary judgment, seeking judgment as a matter of law on all of Navarro's claims. The motions are ripe for the Court's review.

## **II. Legal Standard**

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Catrett*, 477 U.S. at 323. Once the movant carries its burden, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,

475 U.S. 574, 587 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial. *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). The Court will view the summary judgment evidence in the light most favorable to the non-movant. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).

"After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Westphal*, 230 F.3d at 174. However, if the party moving for summary judgment fails to satisfy its initial burden of demonstrating the absence of a genuine issue of material fact, the motion must be denied, regardless of the non-movant's response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

## III. Summary Judgment Record

The summary judgment record establishes the following undisputed facts. Navarro began working for the VIA, a San Antonio-based transit company, on or around December 13, 2013 as a part-time bus operator. (VIA Answer [#32] at ¶ 14; Tellez Smith Answer [#33] at ¶ 14.) Soon thereafter, he was transferred to a full-time paratransit operator, providing curb-to-curb transportation services to customers with disabilities. (VIA Answer [#32] at ¶ 16; Tellez Smith Answer [#33] at ¶ 16.) Navarro worked in this position until July 2018, when he resigned in lieu of termination. (Navarro Dep. [#45-4] at 62:7–14; Exit Interview Survey [#45-12] at 1–3.)

Throughout his employment, Navarro was disciplined several times for violations of VIA's policies and procedures, as stated in the VIA Operator Manual, and for other performance

issues. Navarro was counseled five times for unauthorized absences by his supervisor Defendant Smith. (Navarro Dep. [#45-4] at 48:20–51:12.) He was also disciplined for safety issues (parking and leaving his vehicle unattended and for speeding and causing injury to a patron) and had several minor accidents. (*Id.* at 52:7–57:24.)

From early 2015 through 2017, Navarro requested intermittent FMLA leave on three separate occasions for a herniated disc. (*Id.* at 32:5–17, 41:17–23, 43:14–20.) His herniated disc stemmed from a 2009 injury to his back, shoulder, and neck that occurred while working for the City of San Antonio in his previous position as a firefighter and paramedic. (*Id.*) Each leave request was supported by a certification from Navarro's chiropractor and nurse practitioner, Brad Burdin, who certified that Navarro needed time off to recover from flare-ups from his previous back injury. (2015 Certification [#45-5] at 1–4; February 2016 Certification [#45-6] at 1–4; October 2016 Certification [#45-7] at 1–4.) Navarro applied for and was granted 92 hours of intermittent FMLA leave in 2015, 261.35 hours of intermittent FMLA leave in early 2016, and 72 hours of intermittent FMLA leave in 2017, which was all of the leave he requested on each occasion. (Navarro Dep. [#45-4] at 39:11–19, 41:17–23, 43:14–20.) Navarro did not experience a decrease in compensation or change in his title subsequent to taking intermittent leave. (Navarro Dep. [#45-4] at 39:18–25, 41:24–42:4, 43:25–44:4.)

On July 27, 2017, video footage of Navarro's van captured him using his cell phone while in his vehicle, as opposed to using the van's radio and MTD box, as required by VIA policy. (Photographs from Video Footage [#45-8] at 1–5.) Policy 1.18, which is published in VIA's Operator Handbook, prohibits the use of mobile electronic devices while driving a bus or van and requires devices to be turned off while driving a bus or van. (Handbook [#45-9] at 1.) The policy provides certain exceptions, permitting the use of mobile electronic devices for short

messages only when parked at the end-of-line or a scheduled pick up, drop off, or break location, when no passengers are on board. (*Id.*)

Navarro admitted in his deposition to placing the call to his dispatcher from his cell phone while he was operating the van because his radio was not working. (Navarro Dep. [#45-4] at 61:3–16.) Yet in his affidavit, Navarro states that it was VIA dispatch that called him repeatedly due to a broken box, and he answered the phone because he thought it might have been an emergency. (Navarro Aff. [#52-1] at ¶ 6.) Navarro's affidavit also states that he pulled the van over before answering the phone, and there were no passengers in the van at the time he took the call. (*Id.*)

Navarro was disciplined and charged with a violation of VIA's electronic device policy. (Navarro Dep. [#45-4] at 62:1–6.) Smith informed Plaintiff on July 28, 2018 that he would be terminated and was permitted to resign in lieu of termination. (VIA Answer [#32] at ¶ 21; Tellez Smith Answer [#33] at ¶ 21.) Although Navarro had the right to request a hearing to answer the charges, he instead chose to resign. (Navarro Dep. [#45-4] at 62:7–14; Exit Interview Survey [#45-12] at 1–3.)

## IV. Analysis

VIA seeks summary judgment on all of Navarro's claims, arguing Navarro cannot establish a claim for FMLA discrimination, interference, or retaliation and cannot sustain a Rehabilitation Act claim. Tellez and Smith also seek summary judgment on Navarro's FMLA claim for the same reasons advanced by VIA, but they also argue they are entitled to summary judgment because neither Tellez nor Smith was Navarro's "employer" under the FMLA. The Court should grant both motions for the reasons that follow.

**A. Navarro's FMLA interference claim fails as a matter of law.**

The FMLA provides that an eligible employee is entitled to a total of 12 workweeks of leave during any 12-month period because of a serious health condition. 29 U.S.C. § 2612(a)(1)(D). It is unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any substantive FMLA right. *Id.* at § 2615(a)(1). Navarro pleads in one count a claim for FMLA interference, discrimination, and retaliation. He cannot prevail on any of these various theories of liability under the FMLA.

To establish a claim for FMLA interference, an employee must show that the defendant "interfered with, restrained, or denied her exercise or attempt to exercise FMLA rights, and that the violation prejudiced her." *D'Onofrio v. Vacation Publ'ns, Inc.*, 888 F.3d 197, 209 (5th Cir. 2018) (quoting *Bryant v. Tex. Dep't of Aging & Disability Servs.*, 781 F.3d 764, 770 (5th Cir. 2015)). "An 'interference claim merely requires proof that the employer denied the employee his entitlements under the FMLA.'" *Id.* (quoting *Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 788 (5th Cir. 2017)).

Navarro conceded in his deposition that he received all of the intermittent FMLA leave he requested and took every hour of leave he sought and received. (Navarro Dep. [#45-4] at 39:11–19, 41:17–23, 43:14–20.) Navarro also admitted in his deposition that he did not experience a decrease in compensation or change in his title subsequent to taking intermittent leave. (*Id.* at 39:18–25, 41:24–42:4, 43:25–44:4.) Accordingly, Navarro's own testimony establishes that he was not denied any entitlement under the FMLA, and this claim fails as a matter of law.

Navarro argues in his summary-judgment response that, although there was no adjustment to his title upon his return from leave, Defendants still denied him the benefits to

which he was entitled under the FMLA because, according to Navarro, his FMLA absences were frequently classified as "unauthorized absences" for which Navarro was subsequently disciplined. (Summ. J. Resp. [#53] at 6.) In support of this argument, Navarro cites—but mischaracterizes—his own deposition testimony, in which he merely admits to being disciplined for unauthorized absences. His testimony does not suggest that these unauthorized absences were due to approved intermittent FMLA leave. (Navarro Dep. [#45-4] at 48:20–51:12.) And there is no other evidence in the summary judgment record that suggests that any of Navarro's FMLA absences were deemed "unauthorized absences" by VIA.

The only other argument raised by Navarro regarding his interference claim is that his testimony that Defendants subjected him to a standby schedule, discriminatory comments, and pretextual write-ups in response to his request for FMLA leave establishes a genuine issue of material fact on Defendants' interference with his right to FMLA leave. (Summ. J. Resp. [#53] at 6.) Navarro indeed testified in his deposition that he was harassed by his supervisors and other employees for taking FMLA leave and subjected at times to a stand-by schedule, resulting in reduced hours. (Navarro Dep. [#45-4] at 69:20–74:12, 101:2–103:19, 108:4–109:15, 119:13–23.) Yet these arguments (and the evidence cited in support of them) are better characterized as theories of FMLA retaliation, not interference. Although a plaintiff can technically pursue both an interference and a retaliation claim, a court looks to the substance of plaintiff's claim to determine whether it arises from the alleged deprivation of an FMLA entitlement (interference) or from punishment allegedly exacted for the exercise of an FMLA right (retaliation). *Cuellar v. Keppel Amfels, L.L.C.*, 731 F.3d 342, 351 (5th Cir. 2013) (Elrod, J., concurring). Here, the crux of Navarro's complaint is that he was constructively discharged and harassed for exercising FMLA leave, not that he was denied the right to medical leave. Because Navarro concedes that

he received all the leave he requested and was not denied any substantive right to FMLA leave, Defendants are entitled to summary judgment on this claim.

**B. Navarro's FMLA discrimination or retaliation claim fails as a matter of law.**

The case law treats claims of FMLA discrimination and retaliation as one and the same. *Mauder v. Met. Transit Auth. of Harris Cnty.*, 446 F.3d 574, 580 (5th Cir. 2016). To prevail on a claim for discrimination or retaliation under the FMLA, Navarro must first demonstrate a prima facie case for retaliation by showing that (1) he is protected under the FMLA; (2) he suffered an adverse employment action; and (3) he was either treated less favorably than a similarly situated employee who had not requested leave or the adverse employment action was taken because of his request for leave. *Id.* at 583. If Navarro establishes a prima facie case, the burden shifts to Defendants to articulate a legitimate nondiscriminatory or nonretaliatory reason for the adverse action taken. *See Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 624 (5th Cir. 2008). If Defendants meet this production obligation, the burden shifts back to Navarro to show "by a preponderance of the evidence that the reasoning presented by [Defendants] is a pretext for retaliation." *See Mauder*, 446 F.3d at 583 (internal quotation marks omitted).

Here, it is undisputed that Navarro took protected FMLA leave in the years 2015, 2016, and 2017 and that he voluntarily resigned instead of disputing a pending disciplinary action on July 28, 2017. Even assuming his resignation was an adverse employment action, Navarro cannot establish that he was treated less favorably than a similarly situated employee. Navarro has only identified one employee who allegedly was treated more favorably than he was—a Black female bus operator named Charletta Springs. (Navarro Dep. [#45-4] at 87:15–88:11.) Yet, Navarro conceded in his deposition that he has no knowledge of whether she was ever disciplined for violations of VIA's policies or ever caught using her cell phone while operating a

van, and he did not have any knowledge of whether she was terminated. (*Id.* at 87:15–88:23.) He had only seen news coverage about her that made him believe that she had significant workplace infractions and a poor driving record. (*Id.*) Navarro also admitted he did not know of any other employee who used a cell phone while operating a VIA vehicle but was not terminated. (*Id.* at 88:20–23.)

Nor could Navarro prevail on a theory that he was disciplined and forced to resign because of his taking FMLA leave. Even if Navarro could establish a prima facie case of discrimination or retaliation based on this theory, no reasonable factfinder could conclude that VIA's discipline of Navarro for violating the mobile electronic device policy was pretextual. Navarro admitted in his deposition that he called his dispatcher from his cell phone while operating his van while the radio was not working. (*Id.* at 61:3–16.) VIA's mobile electronic policy prohibits the use of any mobile electronic device while driving a bus or van and warns that any violation of the policy "will result in termination." (Handbook [#45-9] at 1.) Navarro's affidavit provides additional detail about this incident, stating that he had pulled the van over at the time of the call and there were no passengers in the van at the time. (Navarro Aff. [#52-1] at ¶ 6.) But Navarro also contradicts his deposition testimony in his affidavit by stating that it was VIA dispatch that called him because of a broken box, and that he did not place the subject call as admitted in his deposition. (*Id.*)

Navarro cannot manufacture a material issue of fact to defeat a motion for summary judgment by proffering an affidavit that directly contradicts his previous deposition testimony. *Thurman v. Sears, Roebuck & Co.*, 952 F.2d 128, 137 n.23 (5th Cir. 1992). Navarro is attempting to rely on his affidavit and the statements therein to establish that he received, rather than placed, the call and was not driving the van at the time of the incident, and therefore,

Defendants' stated reasons for disciplining him for his violation of the mobile electronic device policy was pretext. He cannot do so. Navarro admitted in his deposition that he called his dispatcher from his cell phone while operating his van while the radio was not working and is bound by this testimony. (Navarro Dep. [#45-4] at 61:3–16.)

Moreover, even if a factfinder could find that Navarro did not actually violate the mobile electronic device policy, there is still insufficient evidence in the record that plausibly links Navarro's alleged constructive discharge with his taking of FMLA leave.[1] The record merely establishes that Navarro took intermittent FMLA leave throughout 2015 to 2017. Although Navarro argues in his response to Defendants' motions for summary judgment that his discipline "occurred immediately after [Navarro's] complaints" about harassment following his treatment upon return from FMLA leave (Summ. J. Resp. [#53] at 7), the record does not support this assertion of close temporal proximity between these events. In order to establish a causal link for purposes of retaliation, the temporal proximity, if offered by itself, must be "very close." *Leal v. BFT, Ltd. P'ship*, 423 Fed. App'x 476, 479 (5th Cir. 2011) (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (per curiam)). The only evidence of a temporal connection between these events is Navarro's affidavit, in which he states he complained to Smith about harassment after taking FMLA leave and "shortly thereafter" he was threatened with

[1] Although the Supreme Court has clarified that the "but-for" causation standard, and not the "motivating-factor" standard, applies to Title VII retaliation claims, it has not yet reached the issue of which causation standard applies in the context of FMLA retaliation claims. *See Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013); *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389–90 (5th Cir. 2013). Prior to *Nassar*, the Fifth Circuit applied the motivating factor analysis in the FMLA context. *Richardson v. Monitronics International, Inc.*, 434 F.3d 327, 333 (5th Cir. 2005). But the Fifth Circuit has not explicitly decided whether, post *Nassar*, the "but for" causation standard applies or the more malleable "motiving factor" causation standard is sufficient to establish the causal link between FMLA-protected activity and an adverse employment action. *See Castay v. Oschner Clinic Found.*, 604 Fed. App'x 355, 356 & n.2 (5th Cir. 2015). Navarro does not argue his case under the motivating-factor framework (*see* Summ. J. Resp. [#53] at 7–8), and so the Court need not decide this issue here.

termination. (Navarro Aff. [#52-1] at ¶¶ 4, 5.) Navarro does not even approximate the dates on which these events occurred or the dates he last took FMLA leave before the termination of his employment. There is not sufficient evidence of the close temporal proximity between Navarro's intermittent FMLA leave (which occurred over a two-year period) and the discipline surrounding his violation of the mobile electronic device policy.

That Navarro complains of other discriminatory and retaliatory acts does not change this result. First, Navarro's testimony describes other retaliatory acts by Defendants, but these acts do not constitute separate and distinct adverse employment actions for purposes of his FMLA discrimination or retaliation claims. The only discriminatory or retaliatory acts identified by Navarro are as follows:

- Navarro testified in his deposition that he was "harassed" by one of his supervisors, Ernest Lara (who is not named as a Defendant in this action), because Lara told Navarro he had been missing a lot of work due to FMLA leave, would check on him during his shifts more than usual, and aggressively criticize him on occasion. (Navarro Dep. [#45-4] at 69:20–74:12.)

- Navarro testified that another van operator (a coworker) named Hortencia yelled at him that he was missing a lot of work due to FMLA leave in front of customers. (*Id.* at 101:2–103:19.)

- Navarro testified that (1) Smith called him in for meetings on occasion and told him that he was only using FMLA because he wanted to be off work on weekends and (2) Navarro complained to Tellez about being placed on standby for shift assignment after taking leave and Tellez responding that it was just "the VIA way." (*Id.* at 108:4–109:15, 119:13–23.)

When asked at his deposition, Navarro could not identify any other discriminatory or retaliatory conduct he allegedly suffered due to his taking FMLA leave. (*Id.* at 98:12–99:15.) Yet in his affidavit, Navarro added additional incidents, stating that Smith told him it was unfair to everyone else that he was taking time off for FMLA leave and thought Navarro was just "milking the system." (Navarro Aff. [#52-1] at ¶ 4.) Navarro also stated that when he returned

from FMLA leave he was placed on "stand-by" instead of a regular paid shift, resulting in only five hours of work instead of a regularly scheduled shift of eight to 12 hours of pay. (*Id.* at ¶ 2.)

Unlike in the context of Title VII disparate treatment claims, an adverse employment action in the context of FMLA retaliation is not limited to ultimate employment decisions, such as hiring, granting leave, discharge, promotion, and compensation. *See McCoy v. City of Shreveport*, 492 F.3d 551, 558 (5th Cir. 2007). Instead the same standard applies as with Title VII retaliation claims in the context of FMLA retaliation claims. *McArdle v. Dell Prods., L.P.*, 293 Fed. App'x 331, 337 (5th Cir. 2008) (extending definition of adverse employment action in Title VII retaliation cases to FMLA retaliation context).

To constitute an adverse employment action for purposes of FMLA retaliation, the action must simply be something that "a reasonable employee would have found . . . [to be] materially adverse" or, in other words, would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Aryain v. Wal-Mart Stores, Tex. LP*, 534 F.3d 473, 484 (5th Cir. 2008) (citing *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68 (2006)) (alteration in original). Examples of such actions, depending on the unique factual circumstances, could include a threat of job loss that is actually likely to come to fruition or a "realistic, drastic pay cut" from someone with final decision-making authority. *See Brandon v. Sage Corp.*, 808 F.3d 266, 271 (5th Cir. 2015). Mere criticism from supervisors and coworkers and increased supervision, like the allegations regarding Lara, Hortencia, and Smith, do not rise to the level of materially adverse employment actions. *See Grice v. FMC Techs., Inc.*, 216 Fed. App'x 401, 404, 407 (5th Cir. 2007) (no adverse action in retaliation case where plaintiff alleged she was "watched more closely than others"); *Puleo v. Texana MHMR Ctr.*, 187 F. Supp. 3d 769, 782 (S.D. Tex. 2016) ("[A]llegations of unwarranted complaints about the quality of the

plaintiff's work and unnecessary job scrutiny and criticisms are not considered adverse employment actions.").

As for Navarro's complaints of being placed on "stand-by" by Tellez and losing hours and his regularly paid shifts, such actions could constitute an adverse employment action if they resulted in a reduction of Navarro's compensation. *See Pegram v. Honeywell, Inc.*, 361 F.3d 272, 284 (5th Cir. 2004) (employment action that negatively affects compensation is adverse). But Navarro conceded repeatedly in his deposition that he did *not* experience a decrease in compensation or change in his title subsequent to taking intermittent leave. (Navarro Dep. [#45-4] at 39:18–25, 41:24–42:4, 43:25–44:4.) Again, Navarro cannot defeat summary judgment by proffering affidavit testimony that conflicts with his deposition testimony. *Thurman*, 952 F.2d at 137 n.23. Navarro's argument in his response that the evidence establishes that he was subjected to "harassing and discriminatory comments which resulted in a reduction in hours and pay" (Summ. J. Resp. [#53] at 4) is not otherwise supported by any evidence in the summary judgment record.

Finally, Plaintiff has not identified evidence that causally connects these additional incidents to his discipline for violating the VIA policy or his alleged constructive discharge sufficient to support the causation element of his prima facie case. Again, Navarro himself admitted in his deposition that he placed a call on his cell phone while operating his VIA vehicle in violation of the mobile electronic device policy. Further, even if Plaintiff could establish a prima facie case, no reasonable factfinder could conclude that Navarro's discipline for the policy violation was pretext for retaliation for taking FMLA leave in light of this evidence. Thus, VIA, as well as Smith and Tellez, are entitled to summary judgment on Navarro's FMLA retaliation

claim. Because Smith and Tellez are entitled to summary judgment for the same reasons as VIA, the Court need not reach the issue of whether they are "employers" under the FMLA.

**C. Navarro's Rehabilitation Act claim fails as a matter of law.**

The Rehabilitation Act states, in relevant part: "No otherwise qualified individual with a disability . . . as defined in section 705(20) . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . ." 29 U.S.C. § 794(a). Section 7(20) defines an "individual with a disability" as an individual who "has a physical or mental impairment which . . . results in a substantial impediment to employment; and can benefit in terms of an employment outcome from vocational rehabilitation services . . . ." *Id.* at 705(20)(A).

VIA argues in its motion for summary judgment that Navarro cannot prevail on his claim under the Rehabilitation Act because he admitted in his deposition that he does not have a disability and was able to perform the functions of a van operator without the need for any accommodation. Navarro failed to respond to this argument in his response to VIA's motion but does advance arguments regarding his Rehabilitation Act claim in his response to the motion for summary judgment filed by Smith and Tellez. Yet, Navarro did not plead a Rehabilitation Act claim against Smith and Tellez in his First Amended Complaint. Nor could he. The Rehabilitation Act does not provide for a cause of action against individuals, but only against entities receiving federal funding. *See Lollar v. Baker*, 196 F.3d 603, 608–09 (5th Cir. 1999). Consequently, Navarro cannot sue Smith and Tellez, individually, under the Act. *See id.*

Because Navarro did not respond to VIA's motion for summary judgment as to Rehabilitation Act claim, he has waived his right to defend against this claim. *See Keelan v.*

*Majesco Software, Inc.*, 407 F.3d 332, 339 (5th Cir. 2005). And even if the Court were to consider the arguments raised in Navarro's response to Smith's and Tellez's motion for summary judgment, VIA would prevail. To establish a claim of discrimination under the Rehabilitation Act, Navarro must establish that (1) he is an individual with a disability, (2) he was otherwise qualified for the position, (3) he worked for a program or activity that received federal financial assistance, and (4) he was adversely treated solely because of his disability. *Chandler v. City of Dallas*, 2 F.3d 1385, 1390 (5th Cir. 1993). There is simply no evidence in the record that Navarro was discriminated against because of his disability. Navarro conceded in his deposition that he does not believe he has a disability and has never requested any assistance or changes in his job due to a disability. (Navarro Dep. [#45-4] at 83:8–84:15.) VIA is entitled to summary judgment on Navarro's Rehabilitation Act claim.

## V. Conclusion and Recommendation

Having considered the motions before the Court, the responses and replies thereto, the summary judgment record, and governing law, the undersigned recommends that Defendant VIA's Motion for Summary Judgment [#45] and Defendants Leo Tellez and Steve Smith's Motion for Summary Judgment [#46] be **GRANTED**.

## VI. Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The party shall file

the objections with the Clerk of Court and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root*, *Inc.*, 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 31st day of July, 2020.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE